RECEIVED
CLERK'S OFFICE
2016 DEC -7 AM 9: 19
U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE [redacted] DISTRICT OF GEORGIA**
MIDDLE

WASEEM DAKER, #901373
(Enter above the full name and prisoner identification number of the plaintiff, GDC number if a state prisoner.)

-vs-

HOMER BRYSON, Commissioner,
THERE'S 43 TOTAL DEFENDANTS (I CAN'T FIT THEM ALL ON THIS PAGE)
PLEASE SEE PAGES 6-10 FOR ALL DEFENDANTS
(Enter above the full name of the defendant(s).)

**I. Previous Lawsuits**

A. Have you filed other lawsuits in federal court while incarcerated in any institution?

Yes (✓) No ( )

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.) I HAVE FILED OTHER LAWSUITS, BUT I DO NOT HAVE ALL THE INFORMATION ON ALL OF THEM. BUT THE INFORMATION ON ALL OF THEM CAN BE FOUND ONLINE ON P.A.C.E.R. PLEASE SEE PACER FOR MORE INFORMATION.

1. Parties to this previous lawsuit:

Plaintiff(s): WASEEM DAKER

Defendant(s): NEIL WARREN, COBB COUNTY

2. Court (name the district): NORTHERN DISTRICT OF GEORGIA

3. Docket Number: 1:10-CV-2084-AT

Rev. 12/5/07

**I.      Previous Lawsuits (Cont'd)**

4.    Name of judge to whom case was assigned: _AMY TOTENBERG_

5.    Did the previous case involve the same facts?

Yes ( )      No (✓)

6.    Disposition (Was the case dismissed?  Was it appealed?  Is it still pending?): _SUMMARY JUDGMENT FOR DEFENDANTS BUT REVERSED IN PART ON APPEALS NOS. 13-14446, 14-10096. IT IS NOW STILL PENDING._

7.    Approximate date of filing lawsuit: _JULY 2, 2010_

8.    Approximate date of disposition: _PENDING_

**II.     Exhaustion of Administrative Remedies**
Pursuant to 28 U.S.C. § 1997e(a), no prisoner civil rights action shall be brought in federal court until all available administrative remedies are exhausted.  Exhaustion of administrative remedies is a precondition to suit, and the prisoner plaintiff must establish that he has exhausted the entire institutional grievance procedure in order to state a claim for relief.

A.    Place of Present Confinement: _GEORGIA STATE PRISON_

B.    Is there a prisoner grievance procedure in this institution?

Yes (✓)      No ( )

C.    Did you present the facts relating to your complaint under the institution's grievance procedure?

Yes (✓)      No ( )

D.    If your answer is YES:
1.    What steps did you take and what were the results? _I FILED GRIEVANCES #231559 AND #231560 ON 11/15/16, BOTH WERE CLOSED AND FORWARDED TO INTERNAL AFFAIRS UNIT, WHICH EXHAUSTS THE GRIEVANCE. THAT SAID, NO ONE FROM INTERNAL AFFAIRS EVER CONTACTED ME._

_I ALSO EXHAUSTED OTHER GRIEVANCES, INCLUDING BUT NOT LIMITED TO: 140844, 146742, 157862, 163174, 169844, 196573, 201059, 24088, 207852, 226979, 229470, AND OTHERS._

2.    If your answer is NO, explain why not: _SOME ISSUES ARE NOT GRIEVABLE BUT WERE EXHAUSTED THROUGH THE ~~GRIEVANCE~~ PROCEDURE, OTHERS ARE NOT GRIEVABLE AT ALL. ON MANY OTHERS, I ATTEMPTED TO FILE GRIEVANCES BUT MY COUNSELOR REFUSED TO ACCEPT ANY GRIEVANCES FROM ME. ON OTHERS, I FILED GRIEVANCES BUT PRISON OFFICIALS REFUSED TO PROCESS THE GRIEVANCE, SOMETIMES RETURNING THE GRIEVANCES TO ME UNPROCESSED, SOMETIMES SIMPLY THROWING THEM AWAY._

**III.   Parties**
(In item A below, place your name in the first blank and place your present address in the second blank.)

A.   Name of Plaintiff:   WASEEM DAKER

Address(es):   #901373
G.S.P.
300 1ST AVE S
REIDSVILLE, GA 30453

(In item B below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Do the same for each additional defendant, if any.)

B.   Defendant(s):   PLEASE SEE ATTACHED PAGES 6-10.
THERE ARE 43 DEFENDANTS.

Employed as   PLEASE SEE ATTACHED PAGES 6-10.

at   PLEASE SEE ATTACHED PAGES 6-10.

**IV.   Statement of Claim**
State here as briefly as possible the facts of your case.  Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need. Attach extra sheets if necessary.)

PLEASE SEE ATTACHED PAGES (6-22) STATEMENT OF SUBSTANTIVE CLAIMS (¶¶ 1-102).

103. PLAINTIFF CLAIMS THAT THE PLRA "THREE STRIKES" PROVISION 28 U.S.C. §1915(g) IS UNCONSTITUTIONAL, AND VIOLATES THE "BREATHING SPACE" PRINCIPLE OF THE FIRST AMENDMENT.

104. PLAINTIFF CLAIMS THAT THE PLRA "THREE STRIKES" PROVISION 28 U.S.C. §1915(g) IS UNCONSTITUTIONAL, AND VIOLATES THE "NARROWLY TAILORED" PRINCIPLE OF THE FIRST AMENDMENT.

105. NOTWITHSTANDING ¶¶ 103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS IN "IMMINENT DANGER OF SERIOUS PHYSICAL INJURY" ("I.D.O.S.P.I."), §1915(g) DUE TO DEFENDANTS' ONGOING CUSTOM OF FORCING PRISONERS TO SHAVE, OR

③

IV.   Statement of Claim (Cont'd)

FORCIBLY SHAVEN, WITH CLIPPERS THAT ARE UNSANITIZED, OR DAMAGED, OR BOTH, WHICH PRESENTS J.D.O.S.P.I. OF INFECTION WITH HIV, HEPATITIS, OR OTHER INFECTIOUS DISEASES, JAIMES V. DORMIRE, 2008 WL 625027, X2-3 (W.D.MO. MAR. 4, 2008), BINGHAM V. MORALES, NO. CV-31-019, 2011 WL 5358594, X (N.2 S.D. GA. NOV. 7, 2011), ANDREWS V. CERVANTES, 493 F.3d 1047, 1055 (9th CIR. 2007).

106.   NOTWITHSTANDING ¶¶103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS IN "J.D.O.S.P.I." DUE TO DEFENDANTS' CUSTOM, POLICY, AND STATED THREATS TO USE FORCE TO SHAVE HIM, HAVING DONE SO ON NUMEROUS OCCASIONS, CUTTING HIM ON AT LEAST TWO OCCASIONS ON 2/5/2015 AND 3/10/2015, BURNING HIM ON AT LEAST ONE ON 2/8/2015, AND BANGING HIS HEAD AGAINST THE WALL TWICE ON 2/6/2015, AND THREATENING TO CONTINUE TO USE FORCE TO SHAVE HIM.

107.   NOTWITHSTANDING ¶¶103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS AGAIN IN "J.D.O.S.P.I." DUE TO DEFENDANTS' CUSTOM, POLICY AND STATED THREATS TO USE FORCE TO SHAVE HIM, INCLUDING THEIR USE OF FORCE ON 11/9/2016, WHICH RESULTED IN INJURY TO HIS BACK AND SHOULDER BLADE, WRISTS, AND LOSS OF FEELING IN HIS FINGERS, AND THREATS TO DO IT AGAIN.

108.   NOTWITHSTANDING ¶¶ 103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS AGAIN IN "J.D.O.S.P.I." DUE TO DEFENDANTS' CUSTOM, POLICY AND STATED THREATS TO USE FORCE TO SHAVE HIM, INCLUDING THEIR USE OF FORCE ON 11/10/16, RESULTING IN FURTHER BACK INJURY/SHOULDER BLADE INJURY, FURTHER LOSS OF FEELING IN HIS FINGERS, FRICTION BURNS, AND AGGRAVATION OF HIS CARPAL TUNNEL SYNDROME.

109.   NOTWITHSTANDING ¶¶ 103-104 SUPRA, PLAINTIFF CLAIMS THAT HE IS IN J.D.O.S.P.I., BECAUSE OF DEFENDANTS' 11/14/16 AND 11/16/16 THREATS, ¶¶ 77, 84, SUPRA.

110.   NOTWITHSTANDING ¶¶ 103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS IN J.D.O.S.P.I. DUE TO DEFENDANTS' CUSTOM OF USING MK-9, WHICH AGGRAVATES HIS ALLERGIES.

111.   NOTWITHSTANDING ¶¶ 103-104, SUPRA, PLAINTIFF CLAIMS THAT HE IS IN J.D.O.S.P.I. BECAUSE OF DEFENDANTS DENYING HIM SENSODYNE TOOTHPASTE FOR HIS SENSITIVE TEETH AND TOOTH ACHES.

V.   Relief

State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.

✱  112. I REQUEST AN EMERGENCY TEMPORARY RESTRAINING ORDER (T.R.O.) ENJOINING DEFENDANTS TO NOT BEAT ME, SPRAY ME WITH ANY CHEMICAL AGENTS, TAZE ME OR OTHERWISE USE ANY PHYSICAL FORCE TO SHAVE ME OR TRIM MY BEARD SO LONG AS IT IS WITHIN THREE(3) INCHES, WHICH IS THE GDC'S CURRENT LIMIT ON HAIR LENGTH.

113. I REQUEST THAT A PRELIMINARY AND PERMANENT INJUNCTION FOR SAME.

114. I REQUEST A PRELIMINARY AND PERMANENT INJUNCTION THAT DEFENDANTS NOT USE PHYSICAL FORCE TO SHAVE PRISONERS, INCLUDING, ME, AT ALL.

115. I REQUEST A PRELIMINARY AND PERMANENT INJUNCTION THAT DEFENDANTS BE ENJOINED FROM FORCING PRISONERS TO SHAVE WITH CLIPPERS THAT ARE UNSANITIZED.

116. I REQUEST A PRELIMINARY AND PERMANENT INJUNCTION THAT DEFENDANTS BE ENJOINED FROM FORCING PRISONERS TO SHAVE WITH DAMAGED CLIPPERS.

117. I REQUEST A PRELIMINARY AND PERMANENT INJUNCTION THAT DEFENDANTS BE ENJOINED FROM USING MK-9 AT ALL, AND ON PLAINTIFF IN PARTICULAR.

(4)

V.    Relief (Cont'd)

118. I REQUEST AN PRELEMENARY AND PERMANENT INJUNCTION THAT DEFENSANTS MAKE SENSOBYNE AVAILABLE TO PRISONERS ON TIER II.

119. I REQUEST PRELEMINARY AND PERMANENT INJUNCTION THAT DEFENBANTS PROVIDE PLANTIFF SENSOBYNE TOOTH PASTE.

120. I REQUEST OTHER DETENTION CISVE, PROSPECTIVE, AND EQUITABLE RELIEF.

121. I REQUEST DECLARATORY JUDGMENTS.

122. I REQUEST NOMINAL DAMAGES, (NOT UNSPECIFIED COMPENSATORY DAMAGES, AND UNSPECIFIED PUNITIVE DAMAGES.

123. I REQUEST COSTS OF PROSECUTING THIS ACTION.

124. I REQUEST OTHER RELIEF THAT THE COURT DEEMS NECESSARY AND/OR APPROPRIATE.


Signed this **4** day of **DECEMBER**, 20**16**.


_____
Signature of Plaintiff


STATE OF _____GEORGIA_____

COUNTY (CITY) OF __TATTNALL COUNTY__ REIDSVILLE

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON ___12/4/16___
                   (Date)


_____
Signature of Plaintiff

WASEEM DAKER
#901373
G.S.P.
300 1ST AVE S
REIDSVILLE, GA 30453

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

2016 DEC -7 AM 9:45

MACON DIVISION

U.S. DISTRICT COURT
MIDDLE DIST OF GA.

| | | |
|---|---|---|
| WASEEM DAKER, | ✱ | CASE NO. |
| Plaintiff | ✱ | |
| | ✱ | |
| v. | ✱ | |
| | ✱ | |
| HOMER BRYSON, Commissioner, | ✱ | 42 USC § 1983 |
| TIMOTHY WARD, Assistant Commissioner, | ✱ | CIVIL RIGHTS |
| JACK KOON, Facilities Director; | ✱ | |
| STEVE UPTON, Deputy Facilities Director, | ✱ | |
| OTIS STANTON, Statewide Tier Coordinator, | ✱ | |
| JENNIFER AMMONS, General Counsel, | ✱ | |
| JASON MITCHELL, Assistant Counsel, | ✱ | |
| DR. STEVEN A. TURNER, Chaplaincy Director, | ✱ | |
| RICKY MYRICK, Director, Office of Investigations and Compliance, | ✱ | PLAINTIFF'S |
| LISA FOUNTAIN, Investigator, Inmate Affairs Unit, | ✱ | ORIGINAL |
| CINDY L. SMITH, Office of Professional Standards, | ✱ | COMPLAINT |
| JOHN DOE, Internal Affairs Director; | ✱ | |
| DR. SHARON LEWIS, Medical Director; | ✱ | |
| DR. JOHN DOE, Dental Director; | ✱ | |
| ROBERT TOOLE, Regional Director | ✱ | |
| BRUCE CHATMAN, Assistant Regional Director, | ✱ | |
| Georgia Department of Corrections, | ✱ | |
| GEORGIA DEPARTMENT OF CORRECTIONS | ✱ | |
| STATE OF GEORGIA | ✱ | |

(6)

MARTY ALLEN, Warden,

TREVONZA BOBBITT, Deputy Warden, Security,

JOHN DOE, Deputy Warden, Care & Treatment,

SHIRLEY KILGORE, Deputy Warden, Administration,

CARRIE JAMES, Adminitrative Assistant,

JOSEPH HUTCHESON, Unit Manager,

CALVIN MILTON SMITH, Chief Counselor,

MS. (FIRST NAME UNKNOWN [FNU]) EVANS, Counselor,

VALIANT LYTE, Chaplain,

TINA KELLEY, D.R. Advocate,

ASHLEY HARTMEYER, Tier II Secretary,

MICHAEL ANDERSON, Major,

ALTON MOBLEY, Captain,

TERRY DEON MOYE, Lieutenant,

REGINALD DEVON FORD, Lieutenant,

CARNESIA WORTHEN, Lieutenant,                    PLAINTIFF'S

CARL ANTHONY ANDERSON, Sergeant,                ORIGINAL

MICHAEL MENDEZ, CERT Guard,                      COMPLAINT

WADE GARRETT NOBILIO, CERT Guard,

CURMIT WILLIAMS, CERT Guard,

ARSENIO WRIGHT, CERT Guard,

MONTQUE L. LITTLES, Guard,

TERRY L. JONES, Guard,

MR. (FNU) NESTER, Guard,

DR. (FNU) GEIGER, Dentist,

Georgia State Prison

Defendants

(7)

## I. INTRODUCTION

1. COMES NOW WASEEM DAKER, PLAINTIFF ABOVE-STYLED, AND PURSUANT TO 42 USC. §1983, BRINGS THIS ACTION AGAINST DEFENDANTS FOR VIOLATING HIS RIGHTS UNDER THE UNITED STATES CONSTITUTION AND RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA"), 42 USC. §§ 2000 cc-1 ET SEQ.

## II. JURISDICTION AND VENUE

2. THIS COURT HAS ORIGINAL JURISDICTION PURSUANT TO 28 USC. §§ 1331 AND 1343.

3. PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE AUTHORIZED PURSUANT TO 28 USC. §§ 2201 AND 2202.

4. VENUE IS PROPER IN THIS DISTRICT PURSUANT TO 28 USC. § 1391(b)(1) BECAUSE ALL DEFENDANTS RESIDE IN GEORGIA AND ALL GDC. CENTRAL OFFICE DEFENDANTS RESIDE IN THIS DISTRICT.

5. VENUE IS ALSO PROPER IN THIS DISTRICT PURSUANT TO 28 USC. § 1391(b)(1) BECAUSE A SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO CLAIMS OCCURRED IN THIS DISTRICT, INCLUDING, BUT NOT LIMITED TO, ADOPTION OF DEFENDANTS' RULES & REGULATIONS, STANDARD OPERATING PROCEDURES ("SOP'S"), POLICIES, CUSTOMS, AS WELL AS DECISIONS WHICH CAUSED THE VIOLATIONS OF PLAINTIFF'S RIGHTS.

## III. PARTIES

6. PLAINTIFF IS WASEEM DAKER, A PRISONER IN THE CUSTODY OF THE GEORGIA DEPARTMENT OF CORRECTIONS ("GDC"). PLAINTIFF IS CURRENTLY INCARCERATED AT: #901373, G.S.P, 300 1ST AVE S, REIDSVILLE, GA 30453.

7. DEFENDANT STATE OF GEORGIA IS A PROPER DEFENDANT PURSUANT TO 42 USC. § 2000 cc-5(4)(A)(i), AND IS INCLUDED IN "GDC DEFENDANTS."

8. DEFENDANT GEORGIA DEPARTMENT OF CORRECTIONS ("GDC") IS A PROPER DEFENDANT PURSUANT TO 42 USC. § 2000 cc-5(4)(A)(ii), AND IS INCLUDED IN "GDC DEFENDANTS."

9. DEFENDANT HOMER BRYSON IS GDC COMMISSIONER, DEFENDANT TIMOTHY WARD IS GDC ASSISTANT COMMISSIONER, DEFENDANT JACK KOON IS G.D.C. FACILITIES DIRECTOR, DEFENDANT STEVE UPTON IS G.D.C. DEPUTY FACILITIES DIRECTOR, DEFENDANT OTIS

STANTON IS GDC STATEWIDE TIER COORDINATOR. DEFENDANT JENNIFER AMMONS IS GDC GENERAL COUNSEL. DEFENDANT JASON MITCHELL IS GDC ASSISTANT COUNSEL. DEFENDANT DR. STEVEN A. TURNER IS GDC CHAPLAINCY DIRECTOR. DEFENDANT RICKY L. MYRICK IS DIRECTOR OF GDC OFFICE OF INVESTIGATIONS AND COMPLIANCE ("OIC"). DEFENDANT LISA FOUNTAIN IS INVESTIGATOR OF GDC INMATE AFFAIRS UNIT. DEFENDANT CINDY L. SMITH IS DIRECTOR OF G.D.C. OFFICE OF PROFESSIONAL STANDARDS ("OPS"). DEFENDANT JOHN DOE IS DIRECTOR OF GDC INTERNAL AFFAIRS OFFICE. DEFENDANT DR. SHARON LEWIS IS GDC MEDICAL DIRECTOR. DEFENDANT DR. JOHN DOE IS GDC DENTAL DIRECTOR. DEFENDANT ROBERT TOOLE IS GDC REGIONAL DIRECTOR a.k.a. FIELD OPERATIONS MANAGER ("F.O.M."). DEFENDANT BRUCE CHATMAN IS GDC ASSISTANT REGIONAL DIRECTOR a.k.a. ASSISTANT F.O.M. DEFENDANTS BRYSON, WARD, KOON, STANTON, AMMONS, MITCHELL, TURNER, MYRICK, FOUNTAIN, C.L. SMITH, DOE, LEWIS, DR. DOE, TOOLE, AND CHATMAN SHALL COLLECTIVELY BE REFERRED TO AS "GDC DEFENDANTS," ALL GDC DEFENDANTS RESIDE IN THIS DISTRICT, ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES, AND IN THEIR OFFICIAL CAPACITIES FOR DECLARATORY, INJUNCTIVE, PROSPECTIVE, AND EQUITABLE RELIEF, AND DAMAGES, AND MAY BE SERVED IN THIS DISTRICT AT: GDC, 300 PATROL ROAD, GIBSON HALL, FORSYTH, IN MONROE COUNTY, GEORGIA, 31029.

10. DEFENDANT MARTY ALLEN IS WARDEN AT GEORGIA STATE PRISON ("G.S.P."). DEFENDANTS TREVONZA BOBBIT, JOHN DOE, AND SHIRLEY KILGORE ARE G.S.P. DEPUTY WARDENS. DEFENDANT CARRIE JAMES IS G.S.P. ADMINISTRATIVE ASSISTANT. DEFENDANT JOSEPH L. HUTCHESON IS G.S.P. TIER II UNIT MANAGER. DEFENDANT CALVIN MILTON SMITH IS G.S.P. CHIEF COUNSELOR. DEFENDANT M.S. [FIRST NAME UNKNOWN ("FNU")] EVANS IS G.S.P. COUNSELOR. DEFENDANT VALIANT LYTE IS G.S.P. CHAPLAIN. DEFENDANT TINA KELLEY IS G.S.P. D.R. ADVOCATE. DEFENDANT ASHLEY HARTMEYER IS G.S.P. TIER II SECRETARY. DEFENDANT MICHAEL ANDERSON IS G.S.P. MAJOR AND CHIEF OF SECURITY. DEFENDANT ALTON MOBLEY IS G.S.P. CAPTAIN. DEFENDANTS TERRY DEON MOYE, REGINALD DEVON FORD, CARNETTA WORTHEN ARE G.S.P. LIEUTENANTS.

DEFENDANTS CARL ANTHONY ANDERSON IS G.S.P SERGEANT, DEFENDANTS MICHAEL MENDEZ, WADE GARRETT NOBLITO; CURMIT WILLIAMS, AND ARSENTO ARE G.S.P CERT. OFFICERS, DEFENDANTS TERRY L. JONES, MONTQUE L. LITTLES, AND (FNU) HESTER ARE G.S.P. CORRECTIONAL OFFICERS (a.k.a. "C.O.'S" OR GUARDS.). DEFENDANTS ALLEN, BOBBITT, DOE KILGORE, JAMES, HUTCHESON, SMITH, EVANS, LYTE, KELLEY, HARTMEYER, ANDERSON, M. MOBLEY MOYE, FORD, WORTHEN, C.A. ANDERSON, MENDEZ, NOBLITO, WILLIAMS, WRIGHT, LITTLES, JONES, HESTER, AND CETGER SHALL COLLECTIVELY BE REFERRED TO AS "GSP DEFENDANTS," AND ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES, AND IN THEIR OFFICIAL CAPACITIES FOR DAMAGES, DECLARATORY, INJUNCTIVE PROSPECTIVE, AND EQUITABLE RELIEF.

## IV. STATEMENT OF FACTS

11. PLAINTIFF HAS BEEN IN GDC CUSTODY FROM OCTOBER 3, 2012, TO PRESENT-DAY.

12. FROM OCTOBER 3, 2012, TO APRIL 2, 2014, PLAINTIFF WAS INCARCERATED IN GDC CUSTODY AT GEORGIA DIAGNOSTIC & CLASSIFICATION PRISON, JACKSON, BUTTS COUNTY.

13. SINCE APRIL 2, 2014, PLAINTIFF HAS BEEN INCARCERATED IN GDC CUSTODY AT G.S.P.

## A. RELIGIOUS EXERCISE

14. PLAINTIFF IS MUSLIM, AN ADHERENT TO THE RELIGION OF ISLAM.

15. PART OF THE PRACTICE OF ISLAM IS THAT ALL MUSLIM MEN ARE REQUIRED TO ATTEND JUMU'AH CONGREGATIONAL PRAYER SERVICES EVERY FRIDAY AFTERNOON. JUMU'AH CONSISTS OF A KHUTBA (SERMON) FOLLOWED BY A CONGREGATIONAL SALAT (PRAYER).

16. PART OF THE PRACTICE OF ISLAM IS THAT ALL MUSLIMS, BOTH MALE AND FEMALE, ARE REQUIRED TO LEARN THE RELIGION, AND TO TEACH IT. TA'LIM (INSTRUCTION, TEACHING, LEARNING), IS AN ISLAMIC CONGREGATIONAL SERVICE FOR WHICH MUSLIMS CAN LEARN AND TEACH THE RELIGION.

17. PART OF THE PRACTICE OF ISLAM IS THE CELEBRATION OF TWO RELIGIOUS HOLIDAYS, CALLED 'EID: 'EID-UL-FITR AND 'EID-UL-ADHA. 'EID-UL-FITR IS A

CELEBRATION OF THE BREAKING OF THE FAST OF RAMADAN; 'EID-UL-ADHA IS A CELEBRATION OF THE BREAKING OF THE FAST OF ABRAHAM AND IS HELD DURING HAJJ (PILGRIMAGE) SEASON APPROXIMATELY 70 DAYS AFTER 'EID-UL-FITR. CELEBRATION OF 'EID CONSISTS OF A MANDATORY CONGREGATIONAL SALAT (PRAYER) AND ALSO OF A SPECIAL FEAST MEAL.

18. PART OF THE PRACTICE OF ISLAM IS THAT MUSLIMS ARE REQUIRED TO SEEK KNOWLEDGE, BOTH RELIGIOUS KNOWLEDGE AND WORLDLY KNOWLEDGE (e.g. MATHEMATICS, NATURAL SCIENCES, SOCIAL SCIENCES, PHILOSOPHY, HISTORY, PSYCHOLOGY, ETC...)

19. PART OF THE PRACTICE OF ISLAM IS THAT MUSLIMS ARE REQUIRED TO PRAY (OFFER SALAT) FIVE (5) TIMES A DAY, AND MUSLIMS SHOULD USE AND WEAR PRAYER OILS OR PERFUMES WHENEVER POSSIBLE OUTSIDE OF SALAT AND ESPECIALLY DURING SALAT.

20. PART OF THE PRACTICE OF ISLAM IS THAT MUSLIMS SHOULD LEARN THE RELIGION FROM THOSE KNOWLEDGEABLE IN IT, SUCH AS SHEIKHS (SCHOLARS) AND IMAMS LEADERS.

21. PART OF THE PRACTICE OF ISLAM IS THAT MUSLIMS SHOULD CLEAN THEIR TEETH WITH MISWAK (a.k.a. MESWAK, a.k.a. SIWAK), A NATURAL TYPE OF TOOTHBRUSH / TOOTH-CLEANING STICK.

22. PLAINTIFF IS CURRENTLY IN THE G.D.C. TIER II PROGRAM.

23. ALL DEFENDANTS, BOTH G.D.C. AND G.S.P., MAINTAIN POLICIES AND/OR CUSTOMS WHEREIN PRISONERS ON TIER II, INCLUDING PLAINTIFF ARE DENIED PRIVILEGES, RIGHTS, AND PROPERTY.

24. AS A RESULT OF DEFENDANTS' POLICIES AND CUSTOMS, DEFENDANTS ARE CURRENTLY DENYING PLAINTIFF JUMU'AH, TALIM, 'EID SALATS, 'EID FEASTS, PRAYER OILS, MISWAK, ISLAMIC BOOKS AND PUBLICATIONS, EDUCATIONAL BOOKS AND PUBLICATIONS, A CD PLAYER, ISLAMIC CD'S, EDUCATIONAL CD'S, JPAY TABLETS, EMAIL, AND THE ABILITY TO EMAIL AND CORRESPOND WITH ISLAMIC SHEIKHS AND IMAMS.

## B. TIER II

25. IN THE GDC, PRISONERS NORMALLY HAVE ACCESS TO RIGHTS AND PRIVILEGES IN GENERAL POPULATION ("G.P."), INCLUDING BUT NOT LIMITED TO: RELIGIOUS SERVICES, EDUCATIONAL CLASSES, COUNSELING CLASSES, WORK DETAILS, GYM CALL, YARD CALL, JPAY TABLET COMPUTERS, EMAIL, TO LIBRARY, LAW LIBRARY, AND COMMISSARY. THEY HAVE UNLIMITED ACCESS TO COLLECT-CALL TELEPHONES IN THE DORMS. THEY ARE ALLOWED CONTACT VISITS WITH UP TO 12 VISITORS EVERY WEEKEND AND HOLIDAY, FOR UP TO SIX HOURS. THEY MAY POSSESS AND RECEIVE PERSONAL PROPERTY SUCH AS PERSONAL BOOKS, MAGAZINES, NEWSPAPERS, RADIOS, CD'S, CD PLAYERS, PERSONAL CLOTHES AND SHOES, AND COMMISSARY ITEMS SUCH AS PERSONAL HYGIENE ITEMS AND FOOD. THEY MAY RECEIVE BOOKS AND PUBLICATIONS FROM PUBLISHERS OR VENDORS. THEY MAY RECEIVE FOOD AND CLOTHING PACKAGES FROM APPROVED VENDOR ACCESS SECUREPAK.

26. PRISONERS ON SEGREGATION ARE NORMALLY PLACED ON ONE OF THREE TIERS: TIER I, TIER II, OR TIER III.

27. PRISONERS ON TIER I ARE USUALLY PLACED ON IT FOR UP TO 30 DAYS. ON TIER I, PRISONERS NORMALLY HAVE ALL IN-CELL PRIVILEGES AND PROPERTY, INCLUDING POSSESSION OF PERSONAL PROPERTY, BOOKS, MAGAZINES, NEWSPAPERS, CD'S, CD PLAYERS, JPAY COMPUTERS EMAIL, PHONE, VISITATION, AND MAY RECEIVE COMMISSARY, BOOK PACKAGES, FOOD PACKAGES, AND CLOTHING PACKAGES. HOWEVER, THEY DO NOT HAVE PRIVILEGES THAT ARE OUTSIDE OF THEIR CELLS, SUCH AS RELIGIOUS SERVICES, EDUCATIONAL CLASSES, COUNSELING CLASSES, WORK DETAILS, GYM, LIBRARY, AND LAW LIBRARY.

28. PRISONERS WHO RECEIVE DISCIPLINARY REPORTS ("D.R.'S") MAY RECEIVE A FORM OF TIER I CALLED DISCIPLINARY ISOLATION AS A SANCTION IF FOUND GUILTY OF AN INFRACTION. PRISONERS ON DISCIPLINARY ISOLATION ARE DENIED ACCESS TO PERSONAL PROPERTY, PHONE CALLS, VISITS, AND OTHER PRIVILEGES. HOWEVER, THEY MAY NOT BE PLACED ON DISCIPLINARY ISOLATION FOR A PERIOD OF LONGER THAN 30 DAYS.

29. TIER II IS A LONG-TERM DISCIPLINARY SANCTION CONSISTING OF AT LEAST NINE(9) MONTHS SOLITARY CONFINEMENT, AND BROKEN DOWN INTO THREE(3) PHASES,

1, 2, AND 3, OF AT LEAST 90 DAYS ON EACH PHASE.

30. PRISONERS ON TIER II HAVE NO ACCESS TO RELIGIOUS SERVICES.

31. PRISONERS ON TIER II ARE DENIED THEIR OWN PERSONAL BOOKS, MAGAZINES, AND NEWSPAPERS, AND MAY NOT RECEIVE ANY THROUGH THE MAIL.

32. PRISONERS ON TIER II ARE DENIED THEIR OWN CD PLAYERS AND CD'S/CASSETTES AND MAY NOT RECEIVE ANY THROUGH THE MAIL.

33. PRISONERS ON TIER II ARE DENIED ACCESS TO JPAY TABLET COMPUTERS AND EMAIL.

34. PRISONERS ON TIER II ARE LIMITED TO ONLY 1, 2, OR 3 PHONE CALLS PER MONTH (DEPENDING ON WHETHER THEY ARE ON PHASE 1, 2, OR 3 RESPECTIVELY), UNLIKE GENERAL POPULATION PRISONERS, WHO CAN MAKE UNLIMITED COLLECT CALLS.

35. UNLIKE G.P. PRISONERS, WHO MAY RECEIVE CONTACT VISITS EVERY SATURDAY, SUNDAY, OR HOLIDAY FROM 9:00 AM TO 3:00 PM., WITH UP TO 12 VISITORS, PRISONERS ON TIER II MAY ONLY RECEIVE 1, 2, OR 3 VISITS PER MONTH (DEPENDING ON IF THEY ARE ON PHASE 1, 2, OR 3 RESPECTIVELY) FOR ONLY TWO(2) HOURS WITH UP TO TWO(2) VISITORS, WITH NO CONTACT.

36. PRISONERS ON TIER II ARE DENIED ACCESS TO GDC COUNSELING CLASSES THAT ARE PREREQUISITES FOR PAROLE, INCLUDING BUT NOT NECESSARILY LIMITED TO: MOTIVATION FOR CHANGE, THINKING FOR A CHANGE, MORAL RECONATION THERAPY ("MRT"), RE-ENTRY, R.S.A.T, AND OTHER PREREQUISITES FOR PAROLE. THIS RENDERS THEM INELIGIBLE FOR PAROLE.

37. PRISONERS ON TIER II ARE DENIED ACCESS TO EDUCATIONAL CLASSES, WORK DETAILS, GYM CALL, LEGAL LIBRARY CALL, YARD CALL, PERSONAL PROPERTY, FOOD AND CLOTHING PACKAGES, COMMISSARY, TV, AND OTHER LIBERTIES AVAILABLE IN GENERAL POPULATION.

38. BOTH GDC SOP'S IIB09 "SOP" "SEGREGATION - TIER II," SECTION I.A, AND SOP IIB09-0003, "SEGREGATION - TIER II" SECTION VI.B.1, A PRISONER MAY BE PLACED ON EITHER TIER I OR TIER II IF "THE OFFENDER IS NOTED AS A THREAT TO THE SAFE AND

SECURE OPERATION OF THE FACILITY." THIS STANDARD IS SO VAGUE AND ARBITRARY THAT IT ALLOWS DEFENDANTS TO PLACE AN OFFENDER ON TIER I OR TIER II FOR ANY REASON THEY LIKE OR FOR NO REASON AT ALL. IN PRACTICE, IF DEFENDANTS LIKE A PRISONER, THEY ASSIGN HIM TO GENERAL POPULATION OR TIER I. IF NOT, THEY PLACE HIM ON TIER II, EVEN IF OTHER SIMILARLY SITUATED PRISONERS ARE ON TIER I OR G.P.

39. WHEN A PRISONER IS PLACED ON TIER II, HE IS NOT GIVEN ANY ADVANCE WRITTEN NOTICE, OR AN OPPORTUNITY TO SPEAK BE HEARD, TO CALL WITNESSES OR TO PRESENT DOCUMENTARY EVIDENCE. THE DECISION TO PLACE THE PRISONER ON TIER II MADE BEFORE THE PRISONER IS EVEN GIVEN NOTICE, WHILE HE IS GIVEN WHAT DEFENDANTS CALL A "TIER II HEARING." A TIER II HEARING IS REALLY NO HEARING AT ALL, BUT A VERBAL NOTICE OF A DECISION ALREADY MADE. THEN, THE TIER II CLASSIFICATION COMMITTEE, OR EVEN A SINGLE MEMBER THEREOF, WILL COME TO THE PRISONER'S CELL DOOR AND TELL HIM, "THIS IS YOUR TIER II HEARING. YOU ARE BEING PLACED ON TIER II BECAUSE OF (WHATEVER REASON THEY USE TO PLACE HIM ON TIER II)." NOTHING A PRISONER SAYS AT THAT POINT CAN CHANGE THE DECISION BECAUSE THE DECISION HAS ALREADY BEEN MADE BEFOREHAND.

40. AFTER BEING ASSIGNED TO TIER II, PRISONERS MAY SUBMIT A WRITTEN APPEAL, CONSISTING OF AN APPEAL FORM (ALLOWING ONE PARAGRAPH) AND ONE ATTACHED PAGE, TO THE FACILITIES DIRECTOR. HOWEVER, PRISONERS MAY NOT CALL WITNESSES OR PRESENT DOCUMENTARY EVIDENCE IN SUPPORT OF A TIER II APPEAL. MOST TIER II APPEALS ARE RUBBERSTAMP-DENIED. ALSO, IF A PRISONER IS PLACED ON TIER II BECAUSE OF A DISCIPLINARY REPORT AND THAT D.R. IS LATER DISMISSED, THE PRISONER HAS NO WAY TO APPEAL OR SEEK RECONSIDERATION.

41. ON APRIL 11, 2016, DEFENDANTS PLACED PLAINTIFF ON TIER II PHASE I. IN DOING SO, THEY DID NOT AFFORD HIM ANY ADVANCE NOTICE, OR OPPORTUNITY TO

SPEAK, BE HEARD, CALL WITNESSES OR DOCUMENTARY EVIDENCE, OR OTHER DUE PROCESS.

42. PLAINTIFF FILED A TIER II APPEAL TO DEFENDANTS ICDON AND STANTON, WHO DENIED IT ON APRIL 21, 2016.

43. ON JULY 13, 2016, DEFENDANTS HUTCHESON AND EVANS PLACED PLAINTIFF ON TIER II PHASE II, BUT AGAIN, WITHOUT ANY ADVANCE NOTICE, OPPORTUNITY TO SPEAK, BE HEARD, CALL WITNESSES OR PRESENT EVIDENCE, OR OTHER DUE PROCESS PROTECTIONS.

44. PLAINTIFF FILED AN APPEAL BECAUSE HE CONTENDED THAT HE SHOULD NOT BE ON TIER II AT ALL, BUT THE APPEAL WAS DENIED.

45. ON OCTOBER 6, 2016, DEFENDANTS PLACED PLAINTIFF ON TIER II PHASE III, BUT AGAIN, WITHOUT ANY ADVANCE NOTICE, OPPORTUNITY TO SPEAK, BE HEARD, CALL WITNESSES OR PRESENT EVIDENCE, OR OTHER DUE PROCESS PROTECTIONS.

46. ON OCTOBER 11, 2016, PLAINTIFF FILED AN APPEAL BECAUSE HE CONTENDED THAT HE SHOULD NOT BE ON TIER II AT ALL, PURSUANT TO ODC SOP, DEFENDANTS HAD SEVEN WORKING DAYS, OR UNTIL OCTOBER 20, 2016 TO DECIDE THE APPEAL, BUT THEY NEVER DID, THEREBY EXHAUSTING THAT REMEDY.

47. ON ~~NOVEMBER~~ OCTOBER 28, 2016, PLAINTIFF SPOKE WITH DEFENDANT ALLEN AND ASKED ABOUT HIS APPEAL, ALLEN TOLD PLAINTIFF HE NEVER RECEIVED IT.

48. ON NOVEMBER 16, 2016, PLAINTIFF FILED MOTIONS ON THIS ISSUE IN CASE NO. 5:12-CV-00459-CAR-MSH (DOCS. ____).

49. ON NOVEMBER 17, 2016, DEFENDANT ALLEN DENIED PLAINTIFF'S APPEAL BUT FABRICATED IT WITH THE DATE 10/17/16, IN RESPONSE TO PLAINTIFF'S MOTIONS.

50. ON NOVEMBER 10, 2016, DEFENDANT ALLEN TOLD PLAINTIFF HE WAS GOING BACK TO PHASE I, WITHOUT PROVIDING PLAINTIFF ANY DUE PROCESS PROTECTIONS.

51. ON NOVEMBER 29, 2016, DEFENDANT EVANS TOLD PLAINTIFF HE WAS GOING BACK TO PHASE I, WITHOUT PROVIDING HIM ANY DUE PROCESS PROTECTIONS.

C.

### BEARD LENGTH LIMIT, USE OF FORCE, UNSANITIZED CLIPPERS, DAMAGED CLIPPERS, DUE PROCESS

52. PART OF THE PRACTICE OF ISLAM IS THAT MUSLIM MEN ARE REQUIRED TO GROW AND WEAR BEARDS. ACCORDING TO THE SUNNAH (TRADITION) OF PROPHET MUHAMMAD (S.A.S.) AND HIS COMPANIONS, MUSLIM MEN MAY GRAB THEIR BEARDS AT THE CHIN AND CUT WHAT PROTRUDES FROM THE BOTTOM OF THEIR FIST, BUT SHOULD WEAR A BEARD AT LEAST AS LONG AS THE WIDTH OF THEIR FISTS, OR A "FIST-LENGTH" BEARD.

53. PLAINTIFF'S FIST IS APPROXIMATELY THREE-INCHES WIDE.

54. ALL GDC DEFENDANTS MAINTAIN RULES & REGULATIONS ("R&R") AND STANDARD OPERATING PROCEDURES ("SOP'S"), THAT LIMIT MALE PRISONERS (BUT NOT FEMALES) TO HAIR LENGTH OF THREE INCHES, BUT LIMIT BEARD LENGTH TO ONLY HALF-INCH.

55. PURSUANT TO GDC SOP IIB01-0011, "FACILITY/CENTER BARBER/COSMETOLOGY SHOPS," SECTION VI. B., SHAVING CLIPPERS MUST BE PROPERLY CLEANED AND SANITIZED AFTER EACH USE.

56. PURSUANT TO GDC SOP IIB01-0011, SECTION VI. B.5., SHAVING CLIPPERS WITH "BROKEN GUARDS OR OTHER DAMAGES THAT FURTHER EXPOSES THE CUTTING BLADE OR CREATES SHARP EDGES WHICH COULD COME INTO CONTACT WITH THE SKIN SHALL NOT BE USED." ("DAMAGED.")

57. THE MANUFACTURER'S INSTRUCTIONS FOR "N-92 CLEAN CLIPPERS" VIRUCIDE USED BY GDC DEFENDANTS PROVIDE THAT CLIPPERS SHOULD BE PROPERLY CLEANED AND SANITIZED AFTER EVERY USE TO PREVENT SPREAD OF HIV, HEPATITIS, AND OTHER INFECTIONS DISEASES.

58. THE MANUFACTURER'S INSTRUCTIONS FOR "MARVICIDE" VIRUCIDE USED BY GDC DEFENDANTS PROVIDE THAT CLIPPERS SHOULD BE PROPERLY CLEANED AND SANITIZED AFTER EVERY USE TO PREVENT SPREAD OF HIV, HEPATITIS, AND OTHER INFECTIONS DISEASES.

59. THE PURPOSE OF THE ABOVE PROVISIONS OF SOP AND OF THE MANUFACTURER'S OWN INSTRUCTIONS IS TO PREVENT THE SPREAD OF HIV, HEPATIS, AND OTHER INFECTIONS DISEASES THROUGH THE USE OF CLIPPERS AND/OR OTHER COSMETOLOGY EQUIPMENT.

60. CONTRARY TO THEIR OWN SOP, ALL DEFENDANTS MAINTAIN A CUSTOM IN GDC PRISONS

(16)

OF DISREGARDING MANUFACTURER'S INSTRUCTIONS AND GDC SOP AND OF REFUSING TO SANITIZE CLIPPERS AND OF USING CLIPPERS WITH BROKEN GUARDS OR OTHER DAMAGE THAT EXPOSES THE SKIN TO SHARP EDGES AND OF INCREASED RISK OF BEING CUT, EXPOSING PRISONERS TO INCREASED RISK OF INFECTION WITH HIV, HEPATITIS, AND OTHER INFECTIOUS DISEASES, WHICH ARE ALREADY COMMON IN THE PRISON POPULATION. DEFENDANTS ALSO MAINTAIN A CUSTOM OF NOT PROPERLY TRAINING EMPLOYEES TO SANITIZE CLIPPERS OR NOT USE DAMAGED CLIPPERS.

61. ALL DEFENDANTS, BOTH GDC AND GSP, HAVE A CUSTOM OF ENFORCING GROOMING REGULATIONS THROUGH DISCIPLINARY ACTION, THREAT OF USE OF FORCE, AND ITS ACTUAL USE.

62. ALL DEFENDANTS, BOTH GDC AND GSP, HAVE A CUSTOM OF FORCING PRISONERS TO SHAVE OR BE FORCIBLY SHAVEN, WITH CLIPPERS THAT ARE UNSANITIZED OR DAMAGED OR BOTH, THROUGH DISCIPLINARY ACTION, THREAT OF USE OF FORCE, AND ITS ACTUAL USE.

63. WHILE AT G.D.C.P., PLAINTIFF WAS REPEATEDLY FORCIBLY SHAVEN WITH CLIPPERS THAT WERE UNSANITIZED, OR DAMAGED, OR BOTH, AND CUTTING HIM, INCLUDING BUT NOT LIMITED TO: ON 11/21/2012, 12/11/2012, 11/22/2013, AND OTHER OCCASIONS.

64. WHILE AT G.S.P., PLAINTIFF HAS BEEN REPEATEDLY FORCIBLY SHAVEN WITH CLIPPERS THAT WERE UNSANITIZED, OR DAMAGED, OR BOTH, AND CUTTING HIM, INCLUDING BUT NOT LIMITED TO: ON 4/10/2014, 7/14/2014, 8/11/2014, 8/14/2014, 8/17/2014, 9/24/2014, 10/1/2014, 12/18/2014, 2/5/2015, 2/20/2015, 3/9/2015, 3/20/2015, AND OTHER OCCASIONS.

65. ON NOVEMBER 9, 2016, DEFENDANTS HUTCHESON, MOYE, AND ANDERSON TOLD PLAINTIFF TO SHAVE HIS BEARD, WHICH WAS THEN ABOUT 2 INCHES LONG, LONGER THAN THE HALF-INCH BEARD LIMIT, BUT SHORTER THAN THE THREE-INCH HAIR LIMIT. PLAINTIFF, WHO WAS HANDCUFFED, SAID "I'LL PASS." FOR RELIGIOUS REASONS. THEY AND DEFENDANTS WILLIAMS, NORLITO JONES, THEN FORCIBLY DRAGGED AND CARRIED HIM BY HIS ARMS HANDCUFFED BEHIND HIS BACK TO THE BARBERSHOP, WHILE DEFENDANTS WORTHEN, KELLEY, AND HESTER WATCHED AND FAILED TO INTERVENE, INJURING PLAINTIFF'S BACK AND RIGHT SHOULDER BLADE. AFTER DRAGGING HIM TO THE BARBERSHOP AND FORCIBLY PLACING HIM IN A BARBER CHAIR,

They then returned him to his cell without shaving him.

66. As a result of this use of force, plaintiff suffered injury and pain to his back and right shoulder blade, from which he has still not fully healed.

67. As a result of this use of force, plaintiff also suffered injury to his wrists from the handcuffs causing loss of feeling in his fingers in both hands and aggravating the carpal tunnel syndrome, with which plaintiff has been diagnosed.

68. On November 10, 2016, defendant Allen threatened plaintiff that he didn't care about plaintiff's grievances or lawsuits, that he was going to show "you how unreasonable I can be," that he was not going to let plaintiff "wear that beard in this prison," and that he was going to shave plaintiff's beard even if he had to use force to do it.

69. Allen then told plaintiff, "you're going back to (Tier II) phase I for that stunt you pulled yesterday," referring to his not shaving the day before.

70. About an hour later, defendant Allen sent defendants Hutcheson, Ford, Lumpkin, Mendez, Nobles, Williams, and Wright to forcibly shave plaintiff. They sprayed him with a chemical agent, MK-9, handcuffed him and dragged/carried him in bars, to the barbershop, without first decontaminating him, and forcibly shaved him, leaving the MK-9 to burn his eyes and throat for more than 30 minutes.

71. They also injured him with further injury to his back/shoulder blade, which has caused him pain and difficulty in moving, walking, bending over, for about three weeks and has still not healed entirely.

72. Plaintiff also suffered friction burns on his arms, further loss of feeling in his fingers, cuts to his arm and head, and bruises on his arm.

73. In addition, the MK-9 caused plaintiff burning in his eyes for more than an hour after the incident, as well as off-and-on for more than a week, burning in his throat, severe mucus development in

HIS NOSE AND THROAT, CAUSING HIM CHOKING AND DIFFICULTY BREATHING.

74. THE MK-9 ALSO AGGRAVATED PLAINTIFF'S ALREADY EXISTENT SINUS AND ALLERGY PROBLEMS, FOR WHICH HE HAD ALREADY BEEN DIAGNOSED. FOR THE NEXT SEVERAL DAYS, PLAINTIFF WAS SNEEZING PROBABLY A THOUSAND TIMES A DAY, AND THEN SEVERAL HUNDRED TIMES A DAY THEREAFTER.

75. DEFENDANTS FAILED TO PROVIDE PLAINTIFF ANY CHANGE OF CLOTHING OR BEDDING AND USING MK-9, LEAVING HIM EXPOSED TO IT CONTINUOUSLY.

76. LATER THAT SAME DATE, 11/10/16, DEFENDANT MOBLEY INSTRUCTED THE DORM GUARDS PER THE WARDEN TO NOT FEED PLAINTIFF, AND PLAINTIFF WAS DENIED BOTH A LUNCH TRAY AND A DINNER TRAY.

77. ON NOVEMBER 14, 2016, DEFENDANT MATHESON THREATENED PLAINTIFF THAT "IN A COUPLE OF WEEKS," "THE SAME THING IS GONNA HAPPEN ALL OVER AGAIN."

78. ON NOVEMBER 15, 2016, PLAINTIFF FILED GRIEVANCE #231559 ON THE 11/9/16 INCIDENT, AND DEFENDANTS CLOSED IT OUT THAT SAME DAY, EXHAUSTING IT, AND SAYING IT WAS REFERRED TO THE GDC INTERNAL INVESTIGATIONS UNIT. HOWEVER, NO ONE FROM THE GDC INTERNAL INVESTIGATIONS UNIT EVER INVESTIGATED IT, AS THE GDC CENTRAL OFFICE MAINTAINS A CUSTOM OF DELIBERATE INDIFFERENCE TO UNNECESSARY USES OF FORCE.

79. ON NOVEMBER 15, 2016, PLAINTIFF ALSO FILED GRIEVANCE #231560 ON THE 11/10/16 INCIDENT, AND DEFENDANTS CLOSED IT OUT THE NEXT DAY, EXHAUSTING IT, AND SAYING IT WAS REFERRED TO THE INTERNAL INVESTIGATIONS UNIT. HOWEVER, AGAIN, NO ONE FROM THE INTERNAL INVESTIGATIONS UNIT INVESTIGATED IT, AS GDC CENTRAL OFFICE MAINTAINS A CUSTOM OF DELIBERATE INDIFFERENCE TO UNNECESSARY USES OF FORCE.

80. ON NOVEMBER 18, 2016, DEFENDANTS ISSUED MOST PRISONERS AND ALL STAFF A SPECIAL HOLIDAY MEAL. HOWEVER, THEY DENIED ONE TO PLAINTIFF BECAUSE OF HIS NOT SHAVING.

( 19 )

81. ON NOVEMBER 18, 2016, DEFENDANT EVANS TOLD PLAINTIFF THAT HE GOING BACK TO [TIER II] PHASE I, AND THAT SHE SPOKE WITH DEFENDANT HUTCHESON WHO TOLD HER THAT PLAINTIFF WAS GOING BACK TO PHASE I. HOWEVER, DEFENDANTS MADE THIS DECISION WITHOUT AFFORDING PLAINTIFF ANY NOTICE OR OPPORTUNITY TO SPEAK, BE HEARD, CALL WITNESSES, OR PRESENT EVIDENCE BEFORE MAKING THIS DECISION.

82. DEFENDANT EVANS THEN REFUSED TO GIVE PLAINTIFF HIS REMAINING TIER II "OFFENDERS UNDER TRANSITION" (OUT) PROGRAM SO HE COULD NOT COMPLETE THE PROGRAM.

83. ON NOVEMBER 29, 2016, PLAINTIFF ALSO TURNED IN TO DEFENDANT EVANS TWO (2) GRIEVANCES ON THE 11/10/16 AND 11/18/16 DENIALS OF FOOD, BUT SHE REFUSED TO PROCESS THEM AND RETURNED THEM TO HIM UNPROCESSED THE NEXT DAY, THEREBY RENDERING THOSE REMEDIES UNAVAILABLE.

84. ON DECEMBER 2, 2016, DEFENDANT ALLEN THREATENED PLAINTIFF THAT "IF I HAVE TO BEAT YOU AND DRAG YOU OUT OF THAT CELL TO SHAVE YOU, I WILL."

D. ALLERGY AND SINUS PROBLEMS, DENTAL PROBLEMS

85. PLAINTIFF HAS BEEN REPEATEDLY DIAGNOSED WITH ALLERGY AND SINUS PROBLEMS, AND IS CURRENTLY ON PRESCRIPTION MEDICATION FOR IT.

86. PLAINTIFF HAS ALSO BEEN SUFFERING ONGOING TOOTHACHES AND PAINS.

87. ON MARCH 9, 2015, DEFENDANT GEIGER DIAGNOSED PLAINTIFF'S TOOTHACHES AND DENTAL PAINS AS LIKELY CAUSED IN PART BY HIS SINUS PROBLEMS, WHICH SHE SAID CAN CAUSE TOOTHACHES, AND CAUSED IN PART BY SENSITIVE TEETH.

88. FOR PLAINTIFF'S SENSITIVE TEETH, SHE INSTRUCTED PLAINTIFF TO USE SENSODYNE TOOTHPASTE.

89. ALL DEFENDANTS, BOTH G.D.C. AND G.S.P. DENY SENSODYNE TOOTHPASTE TO PRISONERS ON TIER II.

90. ALL DEFENDANTS, BOTH G.D.C. AND G.S.P. DENY SENSODYNE TOOTHPASTE

(20)

TO INDIGENT PRISONERS.

91. ON DECEMBER 1, 2016, PLAINTIFF AGAIN SAW DEFENDANT GEIGER, WHO SAID THAT ANYTHING WHICH AGGRAVATES HIS ALLERGIES, LIKE MIK-9, WILL AGGRAVATE HIS TOOTHACHES.

92. DEFENDANT GEIGER ALSO AGAIN INSTRUCTED PLAINTIFF TO USE SENSODYNE TOOTHPASTE FOR HIS SENSITIVE TEETH. HE TOLD HER HE CANNOT GET IT BECAUSE HE IS BOTH INDIGENT AND ON TIER II. SHE SAID SHE COULD NOT DO ANYTHING ABOUT THAT BECAUSE "IT'S OUT OF MY CONTROL."

93.

## V. STATEMENT OF CLAIMS

94. PLAINTIFF CLAIMS THAT DEFENDANTS' DENYING HIM, EACH : (A) JUMU'AN ISLAMIC SERVICE; (B) TA'LIM ISLAMIC SERVICE; (C) 'EID SALAT ; (D) 'EID FEAST; (E) PRAYER OIL; (F) MESWAK; (G) ISLAMIC BOOKS AND PUBLICATIONS; (H) EDUCATIONAL BOOKS AND PUBLICATIONS; (I) ISLAMIC CD'S; (J) EDUCATIONAL CD'S; (K) ACCESS TO JPAY TABLET COMPUTERS AND EMAIL TO CORRESPOND WITH ISLAMIC SHEIKHS AND IMAMS, EACH VIOLATES : (1) THE FIRST AMENDMENT; AND (2) THE RLUIPA.

94. PLAINTIFF CLAIMS THAT DEFENDANTS' PLACING HIM ON TIER II VIOLATES : (1) SUBSTANTIVE DUE PROCESS; (2) PROCEDURAL DUE PROCESS; (3) THE EIGHTH AMENDMENT; (4) THE FIRST AMENDMENT ; AND (5) THE RLUIPA.

95. PLAINTIFF CLAIMS THAT DEFENDANTS' CUSTOMS OF FAILING TO SANITIZE CLIPPERS AND FORCING PRISONERS TO SHAVE, OR BE FORCIBLY SHAVEN, WITH UNSANITIZED CLIPPERS, VIOLATES THE EIGHTH AMENDMENT.

96. PLAINTIFF CLAIMS THAT DEFENDANTS' CUSTOMS OF FORCING PRISONERS TO SHAVE, OR BE SHAVEN, WITH DAMAGED CLIPPERS, VIOLATES THE EIGHTH AMENDMENT.

97. PLAINTIFF CLAIMS THAT DEFENDANTS' CUSTOMS OF USING FORCE TO SHAVE PRISONERS VIOLATES THE EIGHTH AMENDMENT.

98. Plaintiff claims that defendants' customs of deliberate indifference to, and failure to intervene in, unnecessary or excessive uses of force violates the Eighth Amendment.

99. Plaintiff claims that defendants' use of MK-9 in general, and on him in particular, violates the Eighth Amendment.

100. Plaintiff claims that defendants' half-inch beard limit rule, which prevents him from wearing a fist-length beard for religious reasons, and their adverse actions against him for wearing a beard in accordance with his religion, including, but not limited to: (A) the 11/9/16 use of force; (B) the 11/10/16 use of force; (C) denying him meals on 11/10/16; (D) denying him meals on 11/18/16; and (E) demoting him on Tier II and/or keeping him on Tier II, all violate: (1) First Amendment; (2) RLUIPA; (3) procedural ~~process~~ due process; (4) substantive due process; and (5) the Eighth Amendment.

101. Plaintiff claims that defendants' policy and custom denying Sensodyne toothpaste to prisoners on Tier II with sensitive or tooth aches violates the Eighth Amendment.

102. Plaintiff claims that defendants' policy and custom denying Sensodyne toothpaste to indigent prisoners with sensitive teeth or toothaches, violates the Eighth Amendment.

## DECLARATION OF WASEEM DAKER

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above and foregoing facts are true and correct to the best of my knowledge.

This ___4___ day of December, 2016.

_____

WASEEM DAKER

PLAINTIFF, PRO SE

A901373
6-SB
200 1st Ave S
Reidsville, GA 30453

(22)